John **WALKER** and Patricia Walker, Plaintiffs

v.

CITY OF **SALISBURY,** Roger Baskerville, William Stacey, O. Palmer Gillis, III, and Frank Himelright, Defendants

**Civil No. H–01–162.**

United States District Court, D. Maryland.

April 4, 2001.

Peter A. Wimbrow, III, Law Office, Ocean City, MD, Robin R. Cockey, Cockey, Brennan & Maloney, PC, Salisbury, MD, for plaintiffs.

Daniel Karp, Kevin Bock Karpinski, Allen, Johnson, Alexander & Karp, Baltimore, MD, for defendants.

Kathleen M. Wobber, Parler & Wobber, L.L.P., Towson, MD, for defendant Frank Himelright, Jr.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Plaintiff John Walker ("Walker") is presently employed by the City of Salisbury, which is located in Wicomico County, Maryland. On two occasions since December of 1998, Walker's employment was terminated by the City. When he was first fired in 1998, he filed a charge of disability discrimination. Thereafter, pursuant to a Settlement Agreement with the City, Walker was reinstated as a meter reader, effective on October 1, 1999. After he was once again fired on February 2, 2000, he filed a grievance and was again reinstated on or about April 12, 2000.

In this civil action, Walker and his wife have sued the City of Salisbury (the "City") and four individuals, asserting claims under 42 U.S.C. § 1983, under the Maryland Declaration of Rights and under Maryland common law. Besides the City, plaintiffs have named as defendants the City Treasurer, Roger Baskerville ("Baskerville"), and three present or former members of the City Council, namely William Stacey ("Stacey"), O. Palmer Gillis, III ("Gillis") and Frank Himelright ("Himelright").

Presently pending are the following motions: (1) motion to dismiss of the City of Salisbury and (2) motion to dismiss of defendants Baskerville, Stacey, Gillis and Himelright. Defendants' motions have been filed pursuant to Rule 12(b)(6), F.R.Civ.P., on the ground that the complaint fails to state a claim upon which relief may be granted.

In support of those two motions, defendants have filed separate memoranda of

law. Plaintiffs in turn have filed a memorandum in opposition to both motions to dismiss. Recently, both the City and the four individual defendants have filed replies to the plaintiffs' opposition.

Following its review of the pleadings and memoranda, this Court has concluded that no hearing is necessary for a decision on the pending motions. *See* Local Rule 105.6.[1] For the reasons stated herein, both pending motions to dismiss the complaint will be granted.

### I

### *Facts*

The facts as alleged in the complaint are as follows. Walker first began his employment with the City in 1990 as a maintenance worker in its sanitation plant. At all times relevant here, Walker has suffered from a major depressive disorder, as well as a bipolar disorder. Because of these ailments, he has taken medication which produces hand tremors and other mild side effects.

Beginning in 1998, Walker's supervisors began taunting him and making fun of his hand tremors which were caused by his medication. Believing that his mistreatment was produced by a calculated effort to goad him into an extreme reaction, Walker, in December of 1998, had a heated exchange with his supervisor who then fired him.

Following termination of his employment, Walker filed a complaint of disability discrimination with the Maryland Commission on Human Relations. He also pursued reinstatement through the City's grievance process. As a result of his grievance, a Citizen Review Panel recommended that he be reinstated and given back pay and costs.

Thereafter, a settlement was negotiated between Walker and the City Solicitor. A

---

1. None of the parties has requested a hearing.

written Settlement Agreement dated September 24, 1999 was executed by the parties.[2] Pursuant to this Settlement Agreement, Walker's employment was reinstated but not at the City's sanitation plant. Instead, Walker was employed as a meter reader under the aegis of the City Finance Department. Defendant Baskerville, the City Treasurer, was Walker's supervisor. Pursuant to the Settlement Agreement, some $17,000 was paid to Walker, and he was reinstated effective October 1, 1999. The Settlement Agreement contained a confidentiality clause which provided that the facts of the Agreement and the circumstances surrounding its negotiation were not to be disclosed except to legal counsel, to a tax authority, or as otherwise required by law.

Differences immediately arose between Walker and his supervisor Baskerville. Walker was harangued and told that "childish" behavior would not be tolerated. Baskerville had apparently informed representatives of the local press of his displeasure with being saddled with Walker. According to Walker's field supervisor, Baskerville had told him to watch Walker's every step in order to try to devise some pretext to fire Walker.

On January 3, 2000, Baskerville informed Walker that he would seek the termination of Walker's employment through the City's personnel procedures. Walker was informed that the basis for the termination of his employment was Baskerville's discovery that Walker had been fined by the Maryland Department of Natural Resources for having caught two rockfish out of season during the period when Walker had been out of work following his first termination.

On February 3, 2000, a meeting was held, attended by Walker, Baskerville, Walker's attorney, counsel for the City and John Pick, the City's Executive Officer. The purpose of the meeting was to determine whether Baskerville would in fact proceed with Walker's termination. As a result of that meeting, Baskerville decided to terminate Walker's employment. Walker then appealed his termination directly to the City Council.

Previously, on January 5, 2000, the City Council had met in executive session to discuss Baskerville's proposal to fire Walker. The details of the prior Settlement Agreement were discussed, and members of the City Council expressed their concern that Walker had received approximately $6,500 in unemployment insurance from the State of Maryland during the period of time when he was unemployed between December of 1998 and October of 1999. Council members, including defendants Stacey, Gillis and Himelright, stated that Walker's receipt of these monies may have represented "double dipping."

On January 19, 2000 during an open session of the City Council, a public discussion was held by the four members present including defendants Himelright and Stacey. The matter discussed was whether, in spite of the confidentiality clause contained in the Settlement Agreement, details of Walker's case should be made public. Defendants Himelright and Stacey voted to release to the public the minutes and audio tape of the January 5, 2000 executive session at which Walker's case had been discussed in detail. Although the motion to release this information was not supported by a majority of the members present, defendants Himelright, Gillis and Stacey succeeded in releasing the minutes and audio tape in question.

The information disclosed indicated that Walker was "handicapped," accused him of accepting unemployment insurance funds

2. A copy of the Settlement Agreement has been attached to the complaint by plaintiffs.

after he had received payments from the City under the Settlement Agreement, and accused him of "double dipping." These disclosures were reported in numerous accounts in local newspapers and were widely disseminated throughout the community.

Walker then filed suit against the City in the Circuit Court for Wicomico County. *Walker v. City of Salisbury,* Case No. C–00–0084 (Cir. Ct. for Wicomico County). On January 28, 2000, that Court entered a Temporary Restraining Order, ordering the City and its agents to keep sealed the confidential matters at issue and to make no further disclosures of the terms of the parties' agreement to the public or the media.[3]

As a result of the grievance which Walker had filed, the City Council later recommended that he be reinstated. By order of the Mayor, Walker's reinstatement became effective on or about April 12, 2000. Walker alleges that his emotional distress, occasioned by his being pushed to the brink of financial disaster by his wrongful termination and coupled with the humiliation occasioned by the City's wrongful disclosures, caused him to suffer a major depressive relapse necessitating hospitalization and extensive psychiatric treatment. He filed this civil action in this Court on January 19, 2001. As relief, plaintiff and his wife seek a declaratory judgment, an injunction, compensatory and punitive damages, attorneys' fees and costs.

## II

### *Plaintiffs' Claims*

The complaint contains nine counts as follows:

Count I—Deprivation of due process/ § 1983

Count II—Deprivation of equal protection of laws/ § 1983

Count III—Breach of contract: wrongful disclosure

Count IV—Breach of contract: wrongful retaliation

Count V—Invasion of privacy/false light defamation

Count VI—Intentional infliction of severe emotional distress

Count VII—Maryland Declaration of Rights—due process

Count VIII—Maryland Declaration of Rights—equal protection

Count IX—Harm to the marital relationship

Counts I and II present federal claims while Counts III—IX allege claims arising under Maryland law.

## III

### *Plaintiffs' Federal Claims*

From the Court's detailed review of the allegations of the complaint, it is apparent that Walker's claims against the City, its Treasurer and three of the members of the City Council arise essentially under state law. The emotional damages sustained by him allegedly arise because defendants wrongfully disclosed private matters about Walker's handicapped condition and also the circumstances pertaining to his separation from City employment and the resulting Settlement Agreement. According to

---

**3.** Thereafter, the City and Walker entered into a Consent Order dated June 15, 2000 whereby the parties agreed to honor the confidentiality provisions of the Settlement Agreement. The Temporary Restraining Order was dismissed, and the case was removed from the Court's docket. Both the Temporary Restraining Order and the Consent Order have been attached to the complaint as exhibits.

plaintiff Walker, defendants' breach of the Settlement Agreement thereby presented him in a false light publicly and thereby damaged his reputation and subjected him to public shame. By way of such conduct, defendants have allegedly inflicted on Walker severe emotional distress.

Although these causes of action clearly arise under state law, plaintiff has chosen to present them to this federal court. Since diversity jurisdiction does not exist, plaintiff must allege a federal claim if this Court is to hear his case. If jurisdiction exists as to one or more of Walker's federal claims, this Court would have supplemental jurisdiction to hear and decide all of his state law claims. *See* 28 U.S.C. § 1367. Plaintiff has chosen 42 U.S.C. § 1983 as the vehicle for permitting this case to go forward in this Court. He claims that defendants have violated his right to due process and his right to equal protection of the law, as secured by the Fourteenth Amendment.

However, in spite of his persistent attempt to do so, plaintiff has not in his complaint been able to shoe-horn the relevant circumstances here into any viable theory which would permit him to recover damages from defendants under § 1983. The allegations of the complaint do not indicate that Walker's due process and equal protection rights have been infringed by any one of the defendants.

(a)

*Count I—Deprivation of Due Process*

In Count I of the complaint, plaintiff alleges that defendants violated his right to due process of law (1) by firing him on the specious pretext that he caught rockfish out of season, (2) by publicly disclosing private matters, including the fact that he is "handicapped", the circumstances of his separation from City employment and the details of the ensuring settlement, (3) by publicly ridiculing him for ostensibly dis-

honest "double dipping" and (4) by denying him a hearing at which he would have the opportunity to clear his name.

These allegations are insufficient for the purpose of stating a due process claim under § 1983. The decision of the Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) is dispositive here. In that case, the Supreme Court discussed at some length the limits of a protected liberty interest and held that a plaintiff may not rely on defamatory statements as the basis for a due process claim asserted under § 1983. Harm or injury to a plaintiff's interest to his reputation does not result in the deprivation by a state of a plaintiff's due process "liberty" or "property" interests. *Id.* at 712, 96 S.Ct. 1155. In this particular case, it is apparent that plaintiff is seeking damages and other relief primarily because his reputation was damaged by the public disclosures. Under *Paul,* a claim of this sort is not maintainable under § 1983.

Plaintiff concedes that defendants may be correct that he received adequate due process hearings insofar as the termination of his employment is concerned. However, relying on *Wisconsin v. Constantineau,* 400 U.S. 433, 436, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), Walker argues that he had a right to a name-clearing hearing before the City Council and that his due process rights were infringed when no such hearing was granted. But the *Constantineau* decision was distinguished by the Supreme Court in *Paul v. Davis,* 424 U.S. at 701–702, 96 S.Ct. 1155. More recently, the Fourth Circuit in *Jackson v. Long,* 102 F.3d 722 (4th Cir.1996), had before it a claim similar to the one made by plaintiff here. In finding that no constitutional transgression resulted from defamatory statements made by a sheriff, the Fourth Circuit said:

It is well established that even if statements by public officials may have been defamatory under state law, that tort alone does not constitute a constitutional deprivation. *See Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Zepp*, 79 F.3d at 388. Rather, unjustified state action must so seriously damage the plaintiff's reputation and standing in his community as to foreclose his freedom to take advantage of other employment opportunities. *See Zepp, id.*

In this case, Walker's reputation was not so seriously damaged by the public disclosures as to affect his employment opportunities. Indeed, after the allegedly defamatory statements were made, Walker was reinstated, and he remains employed by the City.

Based on these authorities, this Court concludes that Count I of the complaint must be dismissed because it does not state a viable claim under § 1983. Plaintiff has not adequately alleged that defendants violated his right to due process of law.

(b)

*Count II—Deprivation of
Equal Protection*

In Count II of the complaint, plaintiff alleges that by way of defendants' multiple attempts to seek his termination and humiliate him publicly, defendants have withheld from him the usual and customary benefits and perquisites of public employment with the City by reason of his disability, thereby denying him equal protection of the law in violation of the Fourteenth Amendment. These allegations are insufficient for the purpose of stating an equal protection claim under § 1983.

■ According to the plaintiff, defendants' illegal conduct resulted "by reason of his disability." (Complaint ¶ 28). This claim is clearly one seeking relief under the Americans With Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.* However, a plaintiff is not entitled to maintain a § 1983 action for alleged violations of the ADA. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir.1999).

In opposing defendants' motions to dismiss, plaintiff Walker has not explained why he did not file suit under the ADA. Indeed, he was well aware of the provisions of this federal statute, having filed a complaint of disability discrimination with the Maryland Commission on Human Relations when he was fired in December of 1998.

■ In *Great American Savings & Loan v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court noted that cases of alleged employment discrimination are subject to detailed administrative and judicial processes, and the Supreme Court stated that, by allowing a claim alleging discrimination to go forward in a suit brought under § 1983, "a complainant could avoid most if not all of these detailed and specific provisions." *Id.* at 372, 375–78, 99 S.Ct. 2345. In *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court stated that when "a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." Both the Fourth Circuit and this Court have held that the fact that a plaintiff originally could have instituted a Title VII or an ADEA cause of action precluded a suit brought under § 1983 for violation of the Fourteenth Amendment. *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1366–67 (4th Cir.1989), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107

L.Ed.2d 106 (1989); *Burtnick v. McLean,* 953 F.Supp. 121–123 (D.Md.1997). These principles are likewise applicable to plaintiff's equal protection claim asserted in this case under § 1983. For the reasons stated in the cases cited hereinabove, this Court concludes that plaintiff may not in Count II present in this Court a § 1983 cause of action based on an ADA claim arising by reason of his disability.

■ Although not alleged in the complaint, plaintiff in his memorandum in opposition to defendants' motions to dismiss, contends that he is here claiming that through State action similarly situated persons have been treated disparately. (Memorandum, p. 11). Plaintiff argues that he has thereby successfully stated a claim of a denial of equal protection cognizable under § 1983. However, there is no allegation in the complaint that plaintiff has been treated differently from a person similarly situated. The circumstances pertaining to Walker and his employment by the City are unique, and it is highly unlikely that any other City employee was similarly situated. According to plaintiff, he can nevertheless maintain an equal protection cause of action if he merely alleges that the treatment in question was based upon defendants' sheer vindictiveness or spite and was wholly unrelated to any legitimate state objective. There is no merit to such an argument. Were this to be the law, the scope of a § 1983 claim would be expanded to encompass broad aspects of state tort law. This Court is satisfied that a constitutional violation does not arise because a municipal employee has suffered emotional harm as a result of the vindictiveness or spite of his superiors.

For these reasons, this Court concludes that Count II of the complaint must be dismissed because it does not state a viable claim under § 1983. Plaintiff has not alleged facts establishing that defendants violated his right to equal protection of the law.

(c)

*Federal Claims Against the*<br>*Individual Defendants*

Other grounds also exist to support this Court's conclusion that Counts I and II of the complaint must be dismissed as to all defendants. When plaintiff's federal claims against each defendant are separately considered, it is apparent that none of the named defendants violated Walker's constitutional rights.

■ Although defendant Baskerville was Walker's supervisor and recommended in February, 2000 that he be fired, Baskerville did not then or later violate Walker's right to procedural due process of law. Walker was provided with ample procedural due process in connection with his property interest in continued employment. Before he was terminated, Walker and his attorney met with Baskerville, the City's attorney and John Pick, the City's Executive Officer. At that meeting, Baskerville's recommendation that Walker be fired was discussed. As a consequence of the discussions which occurred at that meeting, Baskerville determined that Walker's employment should be terminated. Walker then appealed his termination directly to the City Council and pursued his grievance before that body. After considering the matter, the City Council recommended that Walker be reinstated to his former position as a meter reader. By Order of the Mayor, Walker's reinstatement occurred on April 12, 2000. These facts alleged in the complaint are insufficient to support a claim that Baskerville denied Walker's right to procedural due process.

■ Plaintiff has argued that he was entitled to a name-clearing hearing before his good name was taken from him. But,

Baskerville was not a party to the Settlement Agreement and was not in any way responsible for the alleged wrongful disclosures of private matters concerning Walker's handicapped condition and the circumstances pertaining to his separation from City employment. Baskerville had no authority to grant or deny a request by Walker that a name-clearing hearing be held before the City Council. Moreover, Baskerville, although having the authority to make personnel decisions, was not a final policymaker for the City and thus was not subject to suit under the principles enunciated by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Robinson v. Balog*, 160 F.3d 183, 190 (4th Cir.1998).

Nor is there merit to plaintiffs' claim that defendant Baskerville denied him equal protection of the law. If Baskerville's decision to fire Walker was based on Walker's disability, Walker should have presented such a claim in a suit filed under the ADA and not by way of this § 1983 action.

■ Plaintiff's constitutional claims against defendants Stacey, Gillis and Himelright must also fail. These defendants were all members of the City Council. Plaintiff challenges the City Council's denial of his right to a name-clearing hearing and also the action taken by these defendants in releasing minutes of a closed session of the City Council in which the Settlement Agreement with Walker was discussed. All of these actions were clearly taken by defendants Stacey, Gillis and Himelright in their legislative capacities. As the Fourth Circuit held in *Baker v. Mayor & City Council of Baltimore*, 894 F.2d 679, 681 (4th Cir.), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990): "It is beyond dispute that municipal legislators enjoy the protection of immunity when acting within the sphere of legitimate legislative activity." *See also Bogan v. Scott–Harris*, 523 U.S. 44, 48–54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

■ Relying on *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir.1995), plaintiff contends that merely because these three defendants were Councilmen, they are not necessarily entitled to absolute immunity because of their status. As the Court held in *Holden*, legislative immunity attaches only to legislative actions, and executive and administrative actions are not protected. *Id.* According to plaintiff, the actions of these Councilmen challenged here were executive and administrative and do not give these three defendants legislative immunity. On the record here, the Court must disagree.

■ The vote taken by members of the City Council on January 19, 2000 had nothing to with whether plaintiff Walker should be fired. Rather, the question before the City Council was the degree to which voters and taxpayers in the City of Salisbury were entitled to the dissemination of the minutes of a portion of the closed Council meeting. In *Bogan*, the Supreme Court reaffirmed its holding in *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) that absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Id.* at 54, 118 S.Ct. 966. Whether an act is legislative turns on the nature of the act rather than on the motive or intent of the official performing it. *Id.*

■ Plaintiff has argued that the City Councilmen sued by him acted out of sheer spite and vindictiveness. However, as the Supreme Court has held, it is "not consonant with a scheme of government for a court to inquire into the motives of legislators ..." *Tenney*, 341 U.S. at 377, 71 S.Ct. 783. In *Tenney*, the Supreme Court held

that the defendant had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order to intimidate and silence him and to deter him from effectively exercising his constitutional rights. *Id.; see also Bogan,* 523 U.S. at 55, 118 S.Ct. 966.

The Court is satisfied here that defendants Stacey, Gillis and Himelright possess absolute legislative immunity protecting them from liability in this civil action. Their actions, which plaintiff has challenged here, were taken in the sphere of legitimate legislative activity and cannot be relied upon by plaintiff as having violated his constitutional rights.

▮▮▮ Finally, the federal claims asserted by plaintiff against the City must also fail. First, since there are no underlying constitutional violations by any municipal employee or by members of the City Council, there can be no municipal liability. *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 724 (4th Cir.1991). Second, plaintiff has not satisfied the requirements of *Monell,* 436 U.S. at 692–94, 98 S.Ct. 2018. A municipality like the City in this case may not be held vicariously liable under § 1983 for the constitutional violations of an employee merely because of the existence of that employment relationship. *Id.* Moreover, claims against the other defendants in their official capacities are under applicable law deemed to be claims against the City. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The common law doctrine of *respondeat superior* has no application in actions brought under § 1983. *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987). Municipal liability may result only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

The complaint here contains no allegations which would satisfy the requirements of *Monell.* It has not been alleged that the injuries suffered by plaintiff were the result of the City's policies or customs. There has been no allegation of the existence of any municipal policy, custom or usage which violated plaintiff's constitutional rights. Since municipal fault has not been alleged here as required by *Monell,* plaintiff is not entitled in this case to assert § 1983 claims against the City.

For these alternative reasons, the federal claims asserted against each of the named defendants must fail. When the allegations of Counts I and II are separately considered as to each of the named defendants, this Court concludes that the complaint does not state a constitutional claim against any one of them upon which relief may be granted.

## IV

### *Plaintiffs' Pendent State Law Claims*

There remain plaintiffs' pendent state law claims asserted under the Maryland Declaration of Rights and under the common law of the State of Maryland. Included are claims of breach of contract, defamation and the intentional infliction of severe emotional distress. Defendants in their memoranda have argued that these claims are not maintainable under Maryland law. This Court will not here address those contentions.

▮▮▮ Pendent jurisdiction is a doctrine of discretion and not one of plaintiff's right. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote

justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130. The principles of *Gibbs* have been codified under the name "supplemental jurisdiction." 28 U.S.C. § 1367.

 Here, the only federal claims against the remaining defendants are being dismissed pursuant to defendants' motions to dismiss. A court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). *See Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995). A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein,* 558 F.Supp. 194, 204–205 (D.Md. 1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176 (2d Cir.1974) said the following:

> If it appears that the federal claims ... could be disposed of on a motion ..., the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

 Since defendants' motions to dismiss have been granted as to plaintiffs' federal claims against all defendants and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction in this case over plaintiffs' remaining claims asserted under Maryland law. Those claims should be presented to a state court. The many defenses raised by defendants to these state law claims will not be considered here by this Court.

For all the reasons stated, defendants' motions to dismiss the complaint will be granted, and the complaint will be dismissed in its entirety, with costs. An appropriate Order will be entered by the Court.