988 A.2d 1095

# MAYOR AND CITY COUNCIL OF BALTIMORE

v.

## Zvi GUTTMAN, Trustee.

### No. 2122, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Feb. 2, 2010.

Steven J. Potter (George A. Nilson, City Solicitor, William R. Phelan, Jr., Baltimore City Dept. of Law, on the brief), Baltimore, for appellant.

John B. Stolarz, Baltimore, for appellee.

Panel: ZARNOCH, MATRICCIANI, and KEHOE, JJ.

## ON MOTION FOR RECONSIDERATION

MATRICCIANI, J.

Appellants/cross-appellees Mayor and City Council of Baltimore (collectively "the City"), challenge the entry of judgment by the Circuit Court for Baltimore City after a jury verdict in favor of appellee/cross-appellant Zvi Guttman, trustee in bankruptcy for Ms. Deborah Mullins ("Ms. Mullins"), who brought a 42 U.S.C. § 1983 claim against the City alleging that she was fired for engaging in protected speech. The appellants present four issues for our consideration, which we have rephrased:

I. Whether an official policy or custom of the City of Baltimore caused the termination of Ms. Mullins' contract.

II. Whether there was sufficient evidence to support the jury's verdict.

III. Whether the City is entitled to judgment because the jury found that the City had grounds to terminate Ms. Mullins' contract regardless of her protected speech.

IV. Whether the trial court erred by failing to give the jury instructions requested by the city.

Ms. Mullins cross-appeal injects two further issues:

I. Whether the trial court erred by granting summary judgment in favor of Edward J. Gallagher ("Mr. Gallagher") because he is not entitled to legislative or qualified immunity.

II. Whether the court's denial of Ms. Mullins' petition for attorney fees is an abuse of discretion.

We reverse the court's judgment because of the lack of evidence that an official policy of the City caused the termination of Ms. Mullins' contract and remand for entry of judgment in favor of the City. We reverse the court's grant of summary judgment in favor of Mr. Gallagher for the reasons explained below and remand to the trial court for further proceedings in accordance with the principles enunciated in this opinion.

## FACTS

On December 12, 2001, the City awarded Ms. Mullins' company, Competitive Body and Paint, contract BP02055, which entitled her to bid on auto body repairs required by Baltimore City. On a weekly basis, multiple vendors would place bids on vehicles that the City wanted repaired and generally the lowest bidder would get the work.

At the time Ms. Mullins applied for the contract, her husband, Jimmy Mullins, worked in Baltimore City's central garage as a body man. Mr. Mullins did not work for Ms. Mullins' company at the time the contract was awarded. Prior to bidding on the contract, Ms. Mullins spoke to Arthur McNeal, the city purchasing agent at that time, and advised him that her husband worked in the central garage. Ms. Mullins then wrote to Avery Aisenstark, director of the board of ethics of Baltimore City, requesting an opinion concerning whether her husband's employment should prevent her from bidding on the contract. On March 30, 2001, Mr. Aisenstark wrote a letter advising her that she could bid on the contract

as long as her husband "disqualif[ied] and recuse[d] himself from any participation in the consideration, award, or implementation of that contract." [1]

Mr. Mullins' supervisor, James Wilburn, testified that he and the Purchasing Department made all decisions regarding who was awarded auto body repair work and that he was aware that Mr. Mullins was married to Ms. Mullins. Mr. Wilburn also testified that Mr. Mullins did not get involved in the selection of cars sent out to auto repair vendors and did not inspect cars that were repaired by these vendors.

On January 14, 2004, and February 19, 2004, Ms. Mullins appeared on Fox 45 newscasts and criticized Baltimore City repair practices [2]. On January 16, 2004, Leslie Winner, the Chief Solicitor for Baltimore City, sent an email to Donald Huskey, Deputy Solicitor, and George Winfield, Director of Public Works, to confirm that she had spoken with Mr. Winfield regarding a "fleet vending contract and related issues." Ms. Winner testified at trial that the "vendor" referred to in the email was Ms. Mullins.

On February 4, 2004, Ms. Winner prepared a memorandum, addressed to Deputy Mayor Michael Enright, with copies to Thurman W. Zollicoffer, Jr., the City Solicitor; Donald Huskey, Deputy Solicitor; George Winfield, Director of Public Works; J. Keith Scroggins, Head of the Bureau of General Services for the Department of Public Works; Matt Gallagher, Director of the mayor's City Stat Office; and Edward J.

---

1. Appellant contends that Ms. Mullins misled Mr. Aisenstark by advising him that she and her husband were separated at the time.

2. We will not address the content of the newscasts or Ms. Mullins' statements because we addressed this issue in *Guttman v. Mayor and City Council of Baltimore,* No. 1695, Sept. Term 2006, 176 Md.App. 752 (filed October 19, 2007) (*"Guttman I "*), where we held that her speech related to a matter of public concern and did not relate to her employment contract with the City, and thus the motions court erred in granting summary judgment in favor of the City. We remanded to the Circuit Court for Baltimore City, whose ruling is the subject of the instant appeal.

Gallagher, the City's Purchasing Agent. Ms. Winner stated in the introduction to the memo:

> George Winfield, Director of the Department of Public Works, and Donald Huskey, Deputy Solicitor, requested that I look into the award of the above-captioned contract to Competitive Body and Paint ("CBP"), one of the vendors. I was also asked to look at the quality of the work being performed by the said vendor, the relationship of the said vendor and a city employee and the possible debarment of the vendor.

> \* \* \*

> While it might be possible to eventually debar CBP from City contracts, it might be easier and more politically palatable to proceed in another manner.

Regarding a potential conflict of interest for Ms. Mullins, Ms. Winner stated in the memo:

> Were the relationships between and among the parties disclosed prior to award of the contract? This does not appear to be the case, although everyone seems to know about these relationships at this point in time.

Finally, Ms. Winner addressed the possible debarment of Ms. Mullins:

> Much of what has been said about Deborah Mullins (or Jimmy Mullins) and the award of this contract has not been verified to a legal certainty. Therefore if one wished to debar this company from doing business with the City, a full investigation must be launched.

> As an alternative, this contract could be terminated as to this vendor for either cause or at the convenience of the City. If the City Purchasing Agent wishes to terminate for cause, he must present proof of the default, *i.e.*, inferior work, use of inferior materials, failure to perform in a timely manner, etc. The City Purchasing Agent could also show that Jimmy Mullins failed to notify the City of a Conflict of Interest.

The easiest course to terminate this contract would be for the City Purchasing Agent to terminate for the convenience of the City. This could be done at any time and would not result in the same political fallout as the other modes of termination (or debarment).

On March 29, 2004, Mr. Gallagher wrote Ms. Mullins a letter stating that on March 24, 2004, the Board of Estimates had terminated the Mullins contract. Ms. Mullins asserted that when she called the Purchasing Department to discuss the termination, she was referred to Joseph Mazza, who advised her that part of the reason for her termination was her appearance on Fox 45. Mr. Mazza was an assistant to Mr. Gallagher. At trial, Mr. Gallagher stated:

An issue of conflict of interest had arisen and counsel in the law department researched that issue and determined that there was a conflict of interest or certainly a perception of the conflict of interest. And based upon that reason I proceeded to terminate Deborah Mullins' contract.

Mr. Gallagher also testified that he conducted no further investigation after receiving Ms. Winner's memo and that the conflict of interest was the sole reason for the termination of Ms. Mullins' contract.

About eight months after her contract with the City was terminated, Ms. Mullins filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. Zvi Guttman was appointed trustee for the Mullins bankruptcy estate.

The trial court entered judgment in favor of the City on Ms. Mullins' claim that the appellants breached her contract by firing her, after the jury found that there had been no breach. The jury found in favor of Ms. Mullins on count three, alleging a retaliatory termination of the contract in violation of the First Amendment. The jury also found, in special interrogatory number 5 of the verdict sheet, that "At the time the contract was terminated," the City had "knowledge or grounds to terminate the contract with Plaintiff regardless of Plaintiff's protected statement on Fox 45." The court entered judgment

in favor of appellee in the amount of $110,000 on September 5, 2008, and an amended judgment in the amount of $120,000 on October 8, 2008. The appellants timely appealed.

## DISCUSSION

### I.

The City contends that no official policy or custom of the City of Baltimore caused a retaliatory termination of Ms. Mullins' contract. The City argues that there is no evidence that it had an official policy or custom of retaliating against vendors for their protected speech. Moreover, the City argues that the Board of Estimates is the sole final policymaking authority in the termination of the City's contracts. Finally, the City argues that it is not vicariously liable under 42 U.S.C. § 1983 for the acts of its employees.

42 U.S.C. § 1983 provides a 'civil action for deprivation of rights':

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that municipal corporations could be sued under § 1983. The Court upheld the rule that municipalities could not be rendered liable under § 1983 based on a theory of respondeat superior. *Id.* at 692, 98 S.Ct. 2018. Thus, only when a government policy inflicted the injury could a municipality be liable under § 1983. *Id.* In particular, the Court held:

> Local governing bodies ... can be sued directly under § 1983 ... where the action that is alleged to be unconstitu-

tional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover ... local governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to government custom even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* at 690, 98 S.Ct. 2018.

The appellants argue that Ms. Mullins failed to prove that the City had an illegal policy that injured her, and thus the City cannot be liable. *See Orgain v. City of Salisbury,* 521 F.Supp.2d 465, 480 (D.Md.2007) ("[A] plaintiff's burden is two-fold: (i) to prove a constitutional violation (ii) proximately caused by an official policy or custom."); *see also Board of County Comm'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that it was not sufficient for respondent merely to identify conduct attributable to the county, such as the one-time decision to hire; she also had to demonstrate that through its deliberate conduct, the county was the moving force behind the injury). In *Brown,* the United States Supreme Court expanded on the meaning of "policy" and "custom" and the logic behind the requirement that one be identified before liability is imposed:

Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 404, 117 S.Ct. 1382 (citation omitted).

In *Robinson v. Balog,* 160 F.3d 183 (4th Cir.1998), the Fourth Circuit held that the Mayor and City Council of Baltimore were not liable for the firing of employees in the Bureau of Solid Waste of the Baltimore Department of Public

Works for constitutionally protected speech. The Court held that the District Court had properly dismissed the Mayor and City Council of Baltimore because the employees did not provide proof that their speech was the 'moving force' behind the injury alleged. *Id.* at 191. To satisfy the 'moving force' standard, the plaintiff must prove that the "relevant municipal action—or inaction—was taken with deliberate indifference to a plaintiff's rights." *Id.* Noting that deliberate indifference is a "stringent standard of fault," the federal appeals court held that the record must show that the municipality disregarded a known or obvious risk of its action. *Id.*

Ms. Mullins argues that municipal liability may be imposed for a single decision by municipal policymakers. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (holding that by ordering the deputy sheriffs to enter petitioner's clinic the county prosecutor was acting as the final decisionmaker for the county); *but see Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("proof of a single incident of unconstitutional activity is not sufficient to impose municipal liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") In *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court summarized the guiding principles to be used when examining whether even a single decision can constitute municipal policy:

> First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible ... acts which the municipality has officially sanctioned or ordered. Second, only those municipal officials who have final policymaking authority may ... subject the government to § 1983 liability. Third, whether a particular official has final policymaking authority is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy

adopted by the official or officials responsible under state law for making policy in that area of the city's business. *Id.* at 123, 108 S.Ct. 915.

In order for the municipality officially to sanction or order a retaliatory firing, it must be cognizant of the protected activity. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir.2005). In *Constantine*, the Court held:

> In order to establish a causal connection between First Amendment action and an alleged adverse action, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity. Knowledge alone, however, does not establish a causal connection between the protected activity and the adverse action. There also must be some degree of temporal proximity to suggest a causal connection.

*Id.* at 501.

Here, Ms. Mullins attempts to impute retaliatory animus to the Board of Estimates through circumstantial evidence, *i.e.*, the January 16, 2004 email from Ms. Winner to Mr. Huskey and Mr. Winfield and the February 4, 2004 memo authored by Ms. Winner.[3] The Baltimore City Charter, Article VI § 1, establishes the Board of Estimates, which is comprised of the Mayor, President of the City Council, Comptroller, City Solicitor, and Director of Public Works. Ms. Mullins claims that three of the members of the Board were aware of her protect-

---

**3.** We assume, without deciding, that the Board of Estimates is the final policymaking authority for this matter. *See* Baltimore City Charter, Art. VI, § 11(a) ("The Board of Estimates shall be responsible for awarding contracts and supervising all purchasing by the City as provided in this section and elsewhere in the Charter."); *see also* Baltimore City Charter, Art. VI, § 2 ("To exercise its powers and perform its duties, the Board may promulgate rules and regulations and summon before it the heads of departments, bureaus or divisions, municipal officers, and members of commissions or boards."); Baltimore City Charter, Art. VI, § (g)(1)(v) ("Any recommendation that is made by any municipal agency to the Board of Estimates as to the appropriate award to be made by the Board is advisory only and not binding on the Board.").

ed speech and were "intimately involved in looking for a way to terminate the contract." She identifies them as George Winfield, the Director of Public Works, who has since passed away; Thurman W. Zollicoffer, Jr., the City Solicitor; and Deputy Mayor Michael Enright.[1] In terms of the timing of these events, Mr. Charles Krysiak, Chief of Fleet Management for Baltimore City, testified that Mr. Winfield called him after the newscast to discuss it. Ms. Mullins did not present any evidence, however, to show that Mr. Zollicoffer or the Mayor were aware of the protected speech prior to their decision to fire her, as the February 4 memo does not contain any mention of the protected speech.

██ Precedent does not support the imposition of liability through evidence that shows that only one of the five Board members was aware of the memo when the Board voted to fire Ms. Mullins. *See Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir.1998) ("In a retaliation case, knowledge is necessary to establish causation[.]" ); *see also Allen v. Rumsfeld*, 273 F.Supp.2d 695, 708 (D.Md.2003) ("Temporal proximity is insufficient to establish a causal connection when there has been no showing that defendant knew plaintiff had engaged in the protected activity"); *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3rd Cir.2002) ("[I]f the Commissioners were unaware of [plaintiff's] affidavit, it could not have possibly been a substantial or motivating factor in their decision to suspend him[.]".) Because a jury may not be allowed to infer retaliation from evidence that does no more than suggest that it is a possibility[5], *Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir.1998), we hold that Ms. Mullins' § 1983

---

4. Appellee asks us to impute the Deputy Mayor's knowledge to the Mayor.

5. Mrs. Mullins also failed to present evidence at trial to show that Edward Gallagher, whom she argues was a policymaker with broad discretionary powers to administer and terminate contracts awarded by the Board, was aware of the protected speech before recommending that the contract be terminated. Thus, the verdict against the City cannot be sustained on the basis of his alleged position as the final policymaker in this matter.

claim against the Mayor and City Council of Baltimore must fail as a matter of law [6].

■ The Supreme Court's holding in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), also casts doubt on the jury's decision to award damages to Ms. Mullins. In *Mt. Healthy* the Supreme Court held that an employer can avoid liability if it proves that it would have made the same employment decision even in the absence of protected conduct. Where, as here, the evidence regarding the employer's true reason for firing an employee is in conflict, the question of whether the employee would have been discharged in the absence of the conduct is one for the jury. *O'Leary v. Shipley,* 313 Md. 189, 204, 545 A.2d 17 (1988).

Here, the issue was properly submitted to the jury, but the jury interrogatories were not drafted in a manner consistent with the holding of *Mt. Healthy.* The jurors answered "Yes" to question four on the verdict sheet, which asked: "Were statements Plaintiff made on Fox 45 on January 14, 2004 and February 19, 2004 a substantial or motivating factor in Defendant's decision to terminate the contract?" The jurors, however, also answered "Yes" to question five, which asked: "At the time the contract was terminated, did Defendant have knowledge or grounds to terminate the contract with Plaintiff regardless of Plaintiff's statement on Fox 45?" This interrogatory is different from what the Supreme Court determined to be a proper query once the plaintiff has met the "substantial factor" burden, as the jury did here by answering yes to question four. In *Mt. Healthy,* the Court held that the next step was for the lower court to determine whether the Board had shown by a preponderance of the evidence that it *would*

---

**6.** In the absence of evidence showing that a majority of the Board members knew of the protected speech, Mrs. Mullins' claim that the Board of Estimates ratified Mr. Gallagher's retaliatory firing must also fail. *See St. Louis v. Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

have reached the same decision even in the absence of protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568 (emphasis added). Thus, although the jury's answer to question five undoubtedly calls into question the validity of Ms. Mullins' claim, it does not necessarily preclude liability as it would if drafted in accordance with the Court's holding in *Mt. Healthy.* Regardless, Ms. Mullins' inability to show that a majority of the members of the Board had knowledge of her speech precludes liability. Therefore, we reverse the judgment of the circuit court and remand for entry of judgment in favor of the Mayor and City Council on count III. Accordingly, we do not address the appellants' other arguments.

## II.

█ Ms. Mullins contends that the circuit court erred when it granted summary judgment in favor of Mr. Gallagher because he is not entitled to legislative or qualified immunity. The appellants argue that Mr. Gallagher's prior dismissal is law of the case.[7] Further, they argue that Mr. Gallagher is entitled to legislative and/or qualified immunity, and that count three of Ms. Mullins' third amended complaint fails to state a claim against Mr. Gallagher.

█ In *Bogan v. Scott–Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), the United States Supreme Court held that local legislators are absolutely immune from suit under § 1983 for their legislative activities. The Court held that absolute immunity attaches to all action taken in the sphere of legitimate legislative activity, which is to be determined by the nature of the act. *Id.* at 54–55, 118 S.Ct. 966. Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions. *Id.* at 55, 118 S.Ct. 966. The Court held that Bogan's acts, including the introduction of a budget and signing into law an ordinance, were formally legislative, even though he was an executive

---

7. This issue was abandoned at oral argument. Counsel conceded that Mr. Gallagher was never dismissed before the first appeal despite this Court's statement at page 4, n. 4 of our earlier opinion.

official, because they constituted "integral steps in the legislative process." *Id.* Expanding on this rationale, the Court held:

> We need not determine whether the formally legislative character of petitioners' actions is alone sufficient to entitle petitioners to legislative immunity, because here the ordinance, in substance, bore all the hallmarks of traditional legislation. The ordinance reflected a discretionary, policy-making decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office. And the city council, in eliminating DHHS, certainly governed "in a field where legislators traditionally have power to act."

*Id.* at 56, 118 S.Ct. 966.

Here, the appellants argue that even though Mr. Gallagher was not a member of the Board of Estimates and did not vote to terminate Ms. Mullins' contract with the City, he is entitled to legislative immunity because his preparation and submission of the resolution were integral steps in the legislative process. We do not agree. In *Bogan,* the executive official was found liable because he prepared a budget proposal which eliminated 135 city positions, including that of the plaintiff in that case. 523 U.S. at 47, 118 S.Ct. 966. Here, Mr. Gallagher merely submitted a request for action to the Board seeking to terminate Ms. Mullins' contract under the contract's termination for convenience clause.

His decision, which according to Mr. Gallagher was based on the information in Ms. Winner's memo, was not taken in the context of the City's overall budgetary plan for the fiscal year, as was the decision in *Bogan.* Furthermore, he did not recommend that a number of City positions be eliminated in the context of budget cuts, as did the official in *Bogan.* Rather, he proposed that the Board terminate one contract

only, in a move that was unrelated to the overall budgetary process.

██ The Board of Estimates is part of the executive branch of City government and is not a legislative body. *See* Baltimore City Charter, Art. VII, § 1(a). Even if the act of voting on Mr. Gallagher's request was procedurally legislative, the act of voting on this particular resolution was not substantively legislative because it did not involve a policy-making decision of a general scope. *See Baraka v. McGreevey*, 481 F.3d 187, 198 (3rd Cir.2007) (holding that *Bogan's* analysis illustrates that the two-part substance/procedure inquiry provides a useful means of determining whether actions are in the sphere of legitimate legislative activity). Rather, the decision is better characterized as executive or administrative in nature. Therefore, the trial court erred in dismissing Mr. Gallagher from the case on the basis of legislative immunity. Accordingly, we shall remand the case to it to determine whether he is nevertheless liable for the termination of Ms. Mullins.[8]

 In order to provide guidance to the trial court, we note that Mr. Gallagher was sued both in his official capacity and in his individual capacity. While the theories of liability differ[9], appellee has relied exclusively here on her contention that Mr. Gallagher is responsible for the termination of the contract as a final decision-maker. As we have indicated, *supra*, our holding that the City is not liable under § 1983 is based upon the assumption that the Board of Estimates is the final policymaking authority for this matter. *See* p. 10, n. 3.

---

**8.** We do not address the appellants' contention that Mr. Gallagher is entitled to qualified immunity because they did not raise it at the trial level. *See* Maryland Rule 8–131(a).

**9.** Plaintiffs bringing individual capacity or personal capacity suits under § 1983 can establish personal liability by showing that the official, acting under color of state law, caused the deprivation of a federal right. Thus, the plaintiff need not establish a connection to governmental custom or policy. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Appellee contends, however, that the contract itself vests Mr. Gallagher with the power, as City Purchasing Agent, to terminate the contract. We disagree. The Section on which Ms. Mullins relies for her assertion that Mr. Gallagher had authority to terminate the contract, Section XXIX(C.), states: "The performance of work under this contract may be terminated **by the City in accordance with this clause in whole, or in part,** whenever the City Purchasing Agent shall determine that such termination is in the best interest of the City." Thus, this section must be read in conjunction with the rest of the Section, including XXIX(A.), which clearly gives the Board of Estimates the right to terminate the contract "upon recommendation of the City Purchasing Agent."

Mr. Gallagher's recommendation was not binding upon the Board and thus he was not a final policymaker under *Monell.* *See* Baltimore City Charter, Art. VI, § (g)(1)(v); *see also Walker v. City of Salisbury,* 170 F.Supp.2d 541 (D.Md.2001) (holding that supervisor in city finance department was not a final policymaker for the City even though he had the authority to make personnel decisions). To the extent that Ms. Mullins continues to argue that her § 1983 claim against Mr. Gallagher is based on the assertion that Mr. Gallagher was the final policymaker and thus ultimately responsible for the termination of Ms. Mullins' contract, her claim must fail as a matter of law.[10]

### III.

Ms. Mullins contends that the circuit court abused its discretion when it denied her petition for attorney's fees. She argues that she is entitled to reasonable attorney's fees and expenses and that complete disallowance of attorney's fees was an abuse of discretion by the circuit court. She also

---

10. Our holding that Mr. Gallagher is not the final policymaker would not preclude, on collateral estoppel grounds, Ms. Mullins from constructing an argument on remand which applies the proper standards for an individual capacity suit under § 1983.

argues that the large attorney fee request was justified because of the large amount of time spent on the case.

Reasonableness of fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous. *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 405 Md. 435, 448, 952 A.2d 275 (2008). The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request. *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520 (2006). In light of the fact that we have held that Ms. Mullins § 1983 claim against the City must fail as a matter of law, we do not see any reason to disturb the trial court's decision regarding fees. Any decision regarding attorney's fees in connection with Mr. Gallagher would be premature in light of our remand of the case to the trial court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IN FAVOR OF DEBORAH MULLINS AS TO COUNT THREE OF THE THIRD AMENDED COMPLAINT IS REVERSED.**

**CASE REMANDED FOR ENTRY OF JUDGMENT IN FAVOR OF MAYOR AND CITY COUNCIL OF BALTIMORE ON COUNT III OF THE THIRD AMENDED COMPLAINT.**

**JUDGMENT VACATED AS TO EDWARD GALLAGHER ON COUNT III OF THE THIRD AMENDED COMPLAINT AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANTS AND 50% BY APPELLEES.**